■ JOHN RUTHOSKY, Appellant, v JOHN DEERE COMPANY, Respondent. (And a Third-Party Action.) [651 NYS2d 717] —Mikoll, J. P. Appeals (1) from an order of the Supreme Court (Viscardi, J.), entered September 15, 1995 in Washington County, which, *inter alia*, granted defendant's cross motion for summary judgment dismissing the complaint, (2) from the judgment entered thereon, and (3) from an order of said court, entered December 27, 1995, in Washington County, which denied plaintiff's motion seeking retaxation of costs.

On March 9, 1987 plaintiff was injured while at work when his right arm became entangled in the moving parts of a manure spreader, a wagon used by farmers to spread manure onto fields. The spreader does not have independent power but receives power to operate when the power take-off (hereinafter PTO) at the front end of the spreader is connected to a tractor which transmits the power from the PTO by two drive shafts along the left side of the spreader. These power shafts are covered by shields to prevent outside contact. Defendant claims that the shields were on the spreader when it left the factory and when it left the local dealer. However, there is no dispute that the covers were missing at the time of the accident.

The spreader in question was purchased by third-party defendant, Ideal Dairy Farms, Inc., which is owned by Nathan Dickinson. The spreader, model No. 680, was manufactured in June 1978 by John Deere Welland Works (hereinafter Welland Works), a division of John Deere, Ltd., and marketed by defendant.

On the day of the accident Dickinson asked plaintiff to clean the spreader. To do this, plaintiff climbed into the spreader with a flat shovel and scraped down the sides. He then went into the tractor cab and turned on the PTO switch to cause the loose particles to go out the back of the spreader. At this point he climbed out of the tractor to have a cigarette. He then looked to see if the particles were going out the back and as he turned and started to walk back to the cab of the tractor he slipped and fell. His right arm became entangled in the side power shafts and thereafter had to be amputated above the elbow.

Plaintiff commenced the instant action against defendant alleging causes of action sounding in negligence, strict products liability and breach of warranty. Following joinder of issue, defendant brought a third-party action against Ideal Dairy. Plaintiff next moved for leave to amend the complaint to add John Deere & Company, John Deere, Ltd. and Welland Works as defendants, and to correct the spreader model number from 620 to 680. Defendant cross-moved for summary judgment dismissing the complaint against it. Supreme Court granted defendant's cross motion, dismissed the complaint and ruled that plaintiff's motion for leave to amend was moot. Plaintiff appeals from the order and judgment entered thereon.

Plaintiff moved on October 11, 1995 for an order granting retaxation of costs regarding stenographic fees and amendment of the judgment accordingly pursuant to CPLR 5015 (a) (3) and CPLR 8404. Supreme Court denied the motion and plaintiff also appeals from this order.

Plaintiff's argument that the evidence to be presented at trial created a triable question of fact as to whether the spreader was reasonably safe when manufactured and sold is persuasive. The proper standard to be applied in determining a seller's strict products liability is "whether the product as designed was 'not reasonably safe' " when sold in light of all the evidence presented by both the plaintiff and the defendant (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 108).

Defendant's evidence presented on its motion to dismiss, including that of its expert John McMillan, a design-engineer, established that the safety shields were bolted in place on the product when manufactured and when sold. There was no evidence contradicting this fact. The burden of proof then shifted to plaintiff to come forward with evidentiary proof in admissible form sufficient to require a trial (*see, Van Buskirk v Migliorelli*, 185 AD2d 587, 589, *lv denied* 80 NY2d 761). Plaintiff's proof submitted in opposition to the motion was insufficient to raise a triable issue of fact. There was no question that the spreader had the required shields bolted in place when delivered.

Despite the fact that the protective shields were in place at the time of delivery, the affidavit of plaintiff's expert witness John Sevart, a licensed professional engineer, established that the potential for these shields to crack, fall off and not be replaced created an inference that the spreader was unsafe as designed (*see, Caicedo v Packaging Indus.*, 189 AD2d 617). Sevart described various alternative designs to the bolted shields and how each alternative had been considered in the safety manual issued by defendant. Sevart stated that these alternative designs were economically and technically feasible at the time the spreader was manufactured. He further opined that even assuming that the side shields were in place when delivered, the spreader was nevertheless defective in design and not reasonably safe when sold and delivered to Ideal Dairy and that the accident would not have occurred if these alternative designs had been in place at the time of the accident.

Sevart explained that only two years after the spreader was manufactured, defendant changed the design of the shields to eliminate the cracking, which defendant had found led to the shields falling off and being removed and/or replaced as they were not required for the operation of the spreader. Sevart declared that when defendant developed the new side shield to correct the problem, it did not recall and replace the shields on existing machines. Thus, Sevart's testimony demonstrates the possibility that the shields were capable of being damaged and,

in time, falling off the spreader, and one could reasonably infer from this that although the spreader was safe when delivered, it was unsafe as designed. This evidence was sufficient to create a triable issue as to whether the spreader was unsafe at the time of sale (*see, Caicedo v Packaging Indus.*, 189 AD2d 617, *supra*). Consequently, Supreme Court's order dismissing the complaint must be reversed. In turn, in view of Supreme Court's ruling that plaintiff's motion for leave to amend the summons and complaint and to correct the model number of the spreader was moot, said motion should be remitted to Supreme Court for determination.

We have examined plaintiff's other contentions of error in Supreme Court's rulings on plaintiff's other theories for holding defendant liable to plaintiff and find them without merit.

Finally, plaintiff's contention that Supreme Court improperly denied his motion to reduce the costs for stenographic fees stated in the bill of costs submitted by defendant from $750 to the limit allowable by statute, $250, is meritorious. Costs for stenographic fees taken in connection with examinations before trial are not available above the allowable limit of $250 (*see, Hartmann v Fox*, 87 AD2d 885). The case of *Kolomick v Kolomick* (133 AD2d 69) on which defendant relies only addressed court reporter fees, not stenographic fees related to examinations before trial.

Casey, Yesawich Jr., Spain and Carpinello, JJ., concur. Ordered that the order entered September 15, 1995 and judgment entered thereon are reversed, on the law, without costs, defendant's cross motion for summary judgment denied and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision. Ordered that the order entered December 27, 1995 is reversed, on the law, without costs, motion granted and costs for stenographic fees reduced to $250.